## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS
## AT KANSAS CITY

| | | | |
|---|---|---|---|
| In re: | CUSTOMBILT FIREARMS MANUFACTURING LLC, | ) ) | Case No. 26-20160-dls11 |
| | | ) | Chapter 11 (Voluntary) |
| | Debtor and Debtor-in-Possession | ) ) | Subchapter V |
| | | ) | (Joint Administration Requested) |

**EMERGENCY MOTION FOR APPROVAL OF PRELIMINARY ORDER PURSUANT TO 11 U.S.C. § 363 AND FED. R. BANKR. P. 4001 CONCERNING THE USE OF CASH COLLATERAL AND PROVIDING FOR ADEQUATE PROTECTION AND RELATED MATTERS**

**COMES NOW** Custombilt Firearms Manufacturing LLC, the debtor and debtor-in-possession herein (the "Debtor"), by and through counsel, Ryan M. Graham of WM Law, and moves the Court for entry of a preliminary order authorizing the Debtor's use of cash collateral pursuant to 11 U.S.C. § 363 and Fed. R. Bankr. P. 4001(b), providing for adequate protection and related relief. In support hereof, the Debtor states as follows:

1. On 2/6/2026, Debtor filed its voluntary Petition for relief under Chapter 11 of the Bankruptcy Code (the "Petition Date").

2. The Debtor has remained in possession of the property of its estate and continues operating its business as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

3. The Debtor operates a firearms manufacturing and retail business, including range operations and related retail sales and services (the "Business").

4. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Debtor seeks relief under 11 U.S.C. § 363(c)(2) and (e), Fed. R. Bankr. P. 4001(b), and 11 U.S.C. § 105(a).

5. By way of background, the Debtor's financial distress arose primarily from regulatory actions affecting its ability to conduct firearms retail operations. In April 2022, the operating company underwent an audit by the Bureau of Alcohol, Tobacco, Firearms and Explosives (the "ATF"). Following that audit and subsequent administrative proceedings, the operating company ultimately lost its federal firearms license in August 2023. From that point forward, the business was limited to range operations, training, and related services and was unable to engage in firearms sales, resulting in a substantial reduction in revenue and cash flow. In

October 2025, the federal firearms license was reinstated, and since that time the Debtor has resumed full retail operations and experienced a significant improvement in revenues.

6. The Debtor's operations generate receipts and deposits that may be subject to one or more creditors' asserted security interests and/or liens in accounts, inventory, proceeds, deposit accounts, and related cash and equivalents. To the extent such interests exist, the cash and equivalents constitute "cash collateral" as defined in 11 U.S.C. § 363(a) (the "Cash Collateral").

7. The Debtor has not yet completed a final, comprehensive analysis of all asserted liens and their scope, perfection, validity, and priority. The Debtor nevertheless believes that one or more secured creditors may assert an interest in certain of the Debtor's Cash Collateral (the "Secured Parties"). This Motion is filed without prejudice to the Debtor's and the estate's rights to contest, avoid, subordinate, surcharge, or otherwise challenge any asserted lien or claim.

8. The Debtor cannot operate its Business without the ability to use Cash Collateral to fund post-Petition ordinary course expenses, including payroll, rent, taxes, utilities, vendors, insurance, taxes, inventory/COGS, and other operating costs. Absent authority to use Cash Collateral, the Debtor will suffer immediate and irreparable harm and will likely be forced to cease operations to the detriment of the estate and all creditors. A copy of the Debtors' list of vendors and utilities is attached hereto and incorporated herein as *Exhibit: A.*

9. The Debtor therefore seeks (i) entry of an interim/preliminary order authorizing the Debtor's use of Cash Collateral in accordance with the Budget (defined below) pending a final hearing (and, if an objection is filed, pending an expedited hearing as necessary), and (ii) entry of a final order authorizing continued use of Cash Collateral for 90 days post-petition, or through confirmation, or for a period the Court deems equitable and proper, and until further order of the Court.

10. Attached hereto as *Exhibit: B* and incorporated by reference as if fully set forth herein is the Debtor's post-petition budget of projected receipts and disbursements (the "Budget"). The Budget was prepared in good faith using the Debtor's historical operating results, including the 2025 profit-and-loss information, and reflects reasonable forward-looking assumptions.

11. The Budget is designed to reflect the Debtor's ordinary course cash needs and includes, among other items, a consolidated payroll line ("Payroll (Wages, Taxes & Benefits)") based on normalized historical costs, and payment timing assumptions consistent with ordinary course practice. The Budget also includes a reserve for anticipated property taxes expected to

be paid in a lump sum near the end of April 2026, with amounts set aside in advance so that the obligation can be satisfied when due without disrupting operations.

12. The Budget further assumes modest operational improvement and models an approximate five percent (5%) month-over-month increase to gross revenue. The Debtor believes this assumption is reasonable based on recent performance and does not depend upon extraordinary transactions or asset sales.

13. The Debtor proposes that, effective as of the Petition Date, each Secured Party shall be granted replacement liens on post-petition property of the Debtor and post-petition proceeds of the same type of collateral in which such Secured Party held a prepetition interest, to the same extent and priority as such prepetition interest, solely to the extent of any diminution in value of such Secured Party's interest resulting from the Debtor's use of Cash Collateral. (the "Replacement Liens"). The amount of each Replacement Lien shall be up to the amount of any diminution in the applicable Secured Party's collateral position from the Petition Date, and the priority of each Replacement Lien shall be the same priority as such Secured Party's prepetition interest in similar property, if any.

14. The Debtor further proposes that any Replacement Lien granted pursuant to the interim order shall be effective and perfected upon entry of the interim order without the necessity of execution or filing of financing statements, control agreements, or similar documents; provided, however, that any Secured Party shall be authorized (but not required) to file such documents to evidence or perfect such Replacement Liens, and any ministerial error or omission shall not affect validity or priority.

15. The Debtor notes that the obligations owed to the primary secured lender arise from a single, enterprise-level credit facility secured by collateral owned by both the Debtor and its affiliated debtor, 6201 Robinson Street, LLC. In the affiliated single asset real estate case, periodic post-petition cash payments are being made to such secured lender pursuant to 11 U.S.C. § 362(d)(3). Such payments are intended to protect the secured lender against diminution in the value of its interest in the aggregate collateral securing its claim.

16. The Debtor shall continue to maintain adequate insurance coverage on its property and assets in the ordinary course and shall timely file all post-petition tax returns and make timely deposits and payments of post-petition taxes as they come due in the ordinary course, consistent with the Budget.

17. The Debtor shall not use Cash Collateral to pay prepetition principal or prepetition interest on any prepetition indebtedness except as (i) expressly authorized by a separate order of the

Court, (ii) agreed to in writing by the applicable Secured Party and disclosed to the Court, or (iii) otherwise permitted under the interim/final cash collateral order.

18. The Debtor requests authority to operate substantially in accordance with the Budget, subject to modest variances consistent with ordinary course operations. Specifically, the Debtor requests that the Court authorize (a) variances in any single line item of up to ten percent (10%), and (b) aggregate variances (total disbursements) of up to ten percent (10%) for any measurement period, without further Court order, provided the Debtor is acting in good faith to preserve the Business and the estate and is not making prohibited payments under paragraph 15 above. Variances beyond these thresholds would require consent of the applicable Secured Party or further order of the Court.

19. The Debtor further proposes to provide reasonable post-petition reporting consistent with customary cash collateral practice in this district, including periodic operating reports filed with the Court and made available to all parties in interest through CM/ECF, and such additional budget-to-actual reporting to Secured Parties as the Court may direct or as may be agreed.

20. In the ordinary course of its business, the Debtor holds certain firearms on consignment for third-party owners. Title to such consigned firearms remains at all times with the respective consignors, and the Debtor acts solely as a bailee and sales agent. Amounts received by the Debtor from the sale of consigned firearms that are attributable to the consignors' ownership interests (exclusive of the Debtor's commission) do not constitute property of the estate and do not constitute Cash Collateral. Accordingly, the Debtor seeks authority to remit consignor proceeds in the ordinary course of business, free and clear of any cash collateral restrictions, while continuing to account for and segregate such amounts in accordance with its existing business practices.

21. Attached hereto as *Exhibit C* and incorporated by reference as if fully set forth herein is the Debtor's proposed interim order granting this Motion and scheduling a final hearing pursuant to Fed. R. Bankr. P. 4001(b) (the "Proposed Interim Order").

22. Nothing in the interim order or any final order entered on this Motion shall constitute a waiver, release, or final adjudication of (a) the validity, priority, extent, perfection, or enforceability of any lien or claim, (b) the Debtor's and estate's rights, defenses, setoffs, recoupments, or avoidance actions, or (c) any party's right to seek additional adequate protection or other relief as appropriate.

**WHEREFORE**, the Debtor respectfully requests that the Court enter for (i) an interim/preliminary order authorizing the Debtor to use Cash Collateral for payment of normal and necessary expenses of the Business in accordance with the Budget, subject to the variance authority described above, pending final hearing; (ii) an order scheduling a prompt final hearing pursuant to Fed. R. Bankr. P. 4001(b); (iii) a final order authorizing continued use of Cash Collateral for **90 days post-petition, or through confirmation**, or until further order of the Court; and (iv) such other and further relief as the Court deems just and proper.

Dated: February 6, 2026

Respectfully submitted,
WM Law

s/ Ryan M. Graham
Ryan M. Graham, MO #73470; KS #79061
15095 W. 116th St.
Olathe, KS 66062
Phone (913) 422-0909 / Fax (913) 428-8549
graham@wagonergroup.com
ATTORNEY FOR DEBTOR

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned hereby certify that on February 6, 2026, the foregoing was delivered electronically to all parties that are registered to receive electronic filings on CM/ECF/PACER, and via regular first class, postage prepaid to the parties listed below that are not registered to receive electronic filings.

**[See attached Mailing Matrix]**                    s/ Ryan M. Graham



PROTECT • COMPETE • LEARN

List of Important Vendors/Taxes/Utilities:

1. Davidson's (Firearms vendor)
2. RSR Group (Firearms vendor)
3. Lipsey's (Firearms vendor)
4. Sports South (Firearms vendor)
5. Evergy
6. KS Gas Service
7. Johnson County Waste Water
8. Water One
9. Atronic Alarms
10. Employers Holding (Work Comp insurance)
11. Square
12. Acuity Scheduling
13. Patriot LLC aka Angel Fire Ammunition
14. On Target Ammunition
15. Cintas
16. Tysys Payment Processing ; Credit Card Processor
17. Ballistol USA (Firearms hardware vendor)
18. Tippmann Arms Co (Firearms vendor)
19. Google Fiber
20. Google - email
21. Midwest Diversifies – Roof
22. Tactical Target Systems
23. Waste Management
24. Southwest Communications
25. Wells Fargo
26. In Balance Solutions
27. Radians Inc (Firearms vendor)
28. Van Booven Tree Care – Snow Removal
29. KS Department of Revenue
30. Spectrum
31. Paychex
32. Johnson County Treasurer
33. Epik hosting
34. Siteground Hosting (Website)
35. Facebook
36. Soli Printing
37. Ryan Lawn & Tree
38. Midwest Knife Dist
39. Tekto LLC (Knife vendor)
40. Moss Printing
41. The Storage Place

---

**THE BULLET HOLE • 6201 Robinson Street • Overland Park • KS • 66202**
**(913) 432-0050**
**www.thebullethole.com**

## 13-Week Cash Flow Budget (Cash Collateral)

| | | |
|---|---|---|
| **Debtor:** | Custombilt Firearms Manufacturing | |
| **Case No.:** | TBD | |
| **Budget Period:** | Feb 6, 2026 to | May 7, 2026 |
| **Prepared By:** | TBD | |
| **Prepared Date:** | Feb 6, 2026 | |
| **Instructions:** | Enter all receipts and disbursements as POSITIVE amounts. Totals and cash roll-forward calculate automatically. | |

| Line Item | Notes / Assumptions | Week 1 | Week 2 | Week 3 | Week 4 | Week 5 | Week 6 | Week 7 | Week 8 | Week 9 | Week 10 | Week 11 | Week 12 | Week 13 | Total (13 wks) | Avg / Wk |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Start | | Feb 6, 2026 | Feb 13, 2026 | Feb 20, 2026 | Feb 27, 2026 | Mar 6, 2026 | Mar 13, 2026 | Mar 20, 2026 | Mar 27, 2026 | Apr 3, 2026 | Apr 10, 2026 | Apr 17, 2026 | Apr 24, 2026 | May 1, 2026 | | |
| Week End | | Feb 12, 2026 | Feb 19, 2026 | Feb 26, 2026 | Mar 5, 2026 | Mar 12, 2026 | Mar 19, 2026 | Mar 26, 2026 | Apr 2, 2026 | Apr 9, 2026 | Apr 16, 2026 | Apr 23, 2026 | Apr 30, 2026 | May 7, 2026 | | |
| **CASH SUMMARY** | | | | | | | | | | | | | | | | |
| Beginning Cash Balance | | $63,319.93 | $58,453.29 | $59,097.30 | $59,834.99 | $57,464.51 | $49,111.23 | $50,136.91 | $51,260.94 | $49,281.55 | $46,549.07 | $42,557.38 | $44,087.09 | $45,721.34 | $63,320 | |
| Total Cash Receipts | | $11,204 | $11,341 | $11,481 | $11,622 | $11,764 | $11,909 | $12,055 | $12,203 | $12,352 | $12,504 | $12,657 | $12,813 | $12,970 | $156,874 | $12,067 |
| Total Cash Disbursements | | $16,071 | $10,697 | $10,743 | $13,992 | $20,117 | $10,883 | $10,931 | $14,182 | $15,085 | $16,496 | $11,128 | $11,178 | $18,693 | $180,195 | $13,861 |
| **Net Cash Flow (Receipts - Disb.)** | | ($4,867) | $644 | $738 | ($2,370) | ($8,353) | $1,026 | $1,124 | ($1,979) | ($2,732) | ($3,992) | $1,530 | $1,634 | ($5,723) | ($23,321) | ($1,794) |
| **Ending Cash Balance** | | $58,453.29 | $59,097.30 | $59,834.99 | $57,464.51 | $49,111.23 | $50,136.91 | $51,260.94 | $49,281.55 | $46,549.07 | $42,557.38 | $44,087.09 | $45,721.34 | $39,998.76 | $39,999 | |
| **Minimum Ending Cash Balance (13** | Auto-calculated; highlights liquidity low point. | | | | | | | | | | | | | | $39,999 | |
| **CASH RECEIPTS** | | | | | | | | | | | | | | | | |
| Operating Receipts (Collections) | Projected based on historical average weekly receipts; modeled as ~5% month-over-month growth in total receipts (Feb→Mar→Apr), distributed across weeks. | $11,204 | $11,341 | $11,481 | $11,622 | $11,764 | $11,909 | $12,055 | $12,203 | $12,352 | $12,504 | $12,657 | $12,813 | $12,970 | $156,874 | $12,067 |
| Other Receipts | Refunds, miscellaneous income, etc. | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | | |
| **Total Cash Receipts** | Calculated | $11,204 | $11,341 | $11,481 | $11,622 | $11,764 | $11,909 | $12,055 | $12,203 | $12,352 | $12,504 | $12,657 | $12,813 | $12,970 | | |
| **CASH DISBURSEMENTS** | | | | | | | | | | | | | | | | |
| Payroll (Wages, Taxes & Benefits) | Flat weekly payroll based on 2025 totals indicated in P&L. | $3,017 | $3,017 | $3,017 | $3,017 | $3,017 | $3,017 | $3,017 | $3,017 | $3,017 | $3,017 | $3,017 | $3,017 | $3,017 | $39,220 | $3,017 |
| Intercompany Rent to 6201 Robinson (Landlord) | Reduced rent to fund SARE interest-only payments at 6201 Robinson; assumed paid on/near the 1st (Feb–Apr). | $4,500 | $0 | $0 | $0 | $4,500 | $0 | $0 | $0 | $0 | $4,500 | $0 | $0 | $0 | $13,500 | $1,038 |
| Insurance | Paid at beginning of each month (Feb–Apr). | $918 | $0 | $0 | $0 | $918 | $0 | $0 | $0 | $0 | $918 | $0 | $0 | $0 | $2,754 | $212 |
| Utilities | Paid around the 20th of each month (Feb–Apr). | $0 | $0 | $0 | $3,203 | $0 | $0 | $0 | $3,203 | $0 | $0 | $0 | $0 | $3,203 | $9,609 | $739 |
| Inventory / COGS / Materials | Modeled as % of receipts based on 2025 COGS/Income ratio. | $3,240 | $3,280 | $3,320 | $3,361 | $3,402 | $3,444 | $3,487 | $3,529 | $3,573 | $3,616 | $3,661 | $3,706 | $3,751 | $45,372 | $3,490 |
| Merchant & Credit Card Fees | Modeled as % of receipts based on 2025 credit card fees/Income ratio. | $423 | $428 | $433 | $438 | $444 | $449 | $455 | $460 | $466 | $472 | $478 | $483 | $489 | $5,919 | $455 |
| Professional Fees | Includes projected Ch. 11 professional fees in addition to baseline. | $1,730 | $1,730 | $1,730 | $1,730 | $1,730 | $1,730 | $1,730 | $1,730 | $1,730 | $1,730 | $1,730 | $1,730 | $1,730 | $22,492 | $1,730 |
| Repairs & Maintenance | Weekly average based on 2025 P&L. | $123 | $123 | $123 | $123 | $123 | $123 | $123 | $123 | $123 | $123 | $123 | $123 | $123 | $1,599 | $123 |
| Advertising & Promotion | Weekly average based on 2025 P&L. | $229 | $229 | $229 | $229 | $229 | $229 | $229 | $229 | $229 | $229 | $229 | $229 | $229 | $2,981 | $229 |
| Security | Weekly average based on 2025 P&L. | $105 | $105 | $105 | $105 | $105 | $105 | $105 | $105 | $105 | $105 | $105 | $105 | $105 | $1,363 | $105 |
| IT / Internet / Phone | Weekly average based on 2025 P&L (computer/internet + telephone + web hosting). | $265 | $265 | $265 | $265 | $265 | $265 | $265 | $265 | $265 | $265 | $265 | $265 | $265 | $3,439 | $265 |
| Sales Tax Payment | Paid on the 25th of each month; scaled with 5% MoM revenue growth. | $0 | $0 | $0 | $0 | $3,864 | $0 | $0 | $0 | $4,057 | $0 | $0 | $0 | $4,260 | $12,180 | $937 |
| Interest / Debt Service | Linked to Inputs (weekly) for any non-WF debt service; set to $0 if none. | $163 | $163 | $163 | $163 | $163 | $163 | $163 | $163 | $163 | $163 | $163 | $163 | $163 | $2,115 | $163 |
| **Adequate Protection Payments** | Linked to Inputs (weekly) if providing separate adequate protection payments to secured party. | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Other Operating Expenses | All other operating expenses not separately listed (remainder of 2025 operating expenses). | 434.84 | 434.84 | 434.84 | 434.84 | 434.84 | 434.84 | 434.84 | 434.84 | 434.84 | 434.84 | 434.84 | 434.84 | 434.84 | | |
| Property Tax Reserve (Transfer) | Weekly transfer to reserve account to accumulate ~$12,000 before May. | 923.08 | 923.08 | 923.08 | 923.08 | 923.08 | 923.08 | 923.08 | 923.08 | 923.08 | 923.08 | 923.08 | 923.08 | 923.08 | | |
| Total Cash Disbursements | Calculated | 16070.58 | 10697.43 | 10742.93 | 13992 | 20117.42 | 10882.83 | 10930.62 | 14181.98 | 15084.82 | 16495.62 | 11127.68 | 11178.47 | 18692.54 | | |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS
AT KANSAS CITY**

| | | | |
|---|---|---|---|
| In re: | CUSTOMBILT FIREARMS MANUFACTURING LLC, | ) ) ) | Case No. 26-20160-dls11 |
| | | ) | Chapter 11 (Voluntary) |
| | Debtor and Debtor-in-Possession | ) ) | Subchapter V |
| | | ) | (Joint Administration Requested) |

**INTERIM ORDER (I) AUTHORIZING USE OF CASH COLLATERAL; (II)
GRANTING ADEQUATE PROTECTION; AND (III) SCHEDULING A FINAL
HEARING PURSUANT TO BANKRUPTCY RULE 4001(B)**

THIS MATTER comes before the Court upon the Emergency Motion for Approval of Preliminary Order Pursuant to 11 U.S.C. § 363 and Fed. R. Bankr. P. 4001 Concerning the Use of Cash Collateral and Providing for Adequate Protection and Related Matters (the "Motion") filed by Custombilt Firearms Manufacturing, LLC, the debtor and debtor-in-possession (the "Debtor").

WHEREUPON, having reviewed the evidence before it, the Court finds as follows:

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on February 6, 2026 (the "Petition Date") and continues to operate its business as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

3. Certain cash and cash equivalents of the Debtor constitute "cash collateral" as defined in 11 U.S.C. § 363(a) (the "Cash Collateral"), in which one or more creditors may assert liens or security interests (the "Secured Parties").

4. The Debtor has demonstrated that the immediate and continued use of Cash Collateral is necessary to avoid immediate and irreparable harm to the Debtor's estate and to preserve the going-concern value of the Debtor's business.

5. The Debtor has proposed adequate protection that satisfies the requirements of 11 U.S.C. §§ 361 and 363(e) for any Secured Party asserting an interest in Cash Collateral.

6. The Budget was prepared in good faith, reflects reasonable and conservative assumptions based on historical operating results, and constitutes a reasonable projection of the Debtor's anticipated cash receipts and disbursements during the interim period.

**IT IS THEREFORE ORDERED** that the Motion is hereby GRANTED on an interim basis authorizing the Debtor's interim use of cash collateral and inventory until further order of this Court.

**IT IS FURTHER ORDERED** that the Debtor's interim use of Cash is expressly conditioned upon the following:

1. <u>Authorization to Use Cash Collateral.</u> Effective as of the Petition Date, the Debtor is authorized, on an interim basis, to use Cash Collateral solely to pay ordinary course and necessary operating expenses in accordance with the Budget attached to the Motion as Exhibit A, subject to the terms and conditions of this Order.

2. <u>Budget Compliance and Variances.</u> The Debtor shall operate substantially in accordance with the Budget. Recognizing that cash flow projections are estimates, the Debtor is authorized to incur **modest variances** from the Budget without further order of the Court, provided that: (a) variances in any individual line item do not exceed **ten percent (10%)**, and (b) aggregate disbursements for any measurement period do not exceed **ten percent (10%)** of the amounts

projected in the Budget. Any variance beyond these thresholds requires either the consent of the applicable Secured Party or further order of the Court.

3.      Adequate Protection – Replacement Liens. As adequate protection for the use of Cash Collateral, and only to the extent of any valid, perfected, and unavoidable prepetition lien or security interest in Cash Collateral, each Secured Party is granted a replacement lien on post-petition cash collateral and proceeds thereof of the same type and priority as such Secured Party held as of the Petition Date, subject to the rights of the estate under the Bankruptcy Code. Such replacement liens shall be deemed automatically perfected upon entry of this Order without the necessity of further action, filing, or recording.

4.      Adequate Protection – Enterprise-Level Considerations. The Court finds that the adequate protection provided herein is sufficient when considered in the aggregate with the periodic post-petition payments being made to the secured lender in the affiliated case of 6201 Robinson Street, LLC, pursuant to 11 U.S.C. § 362(d)(3), together with the preservation of the Debtor's going-concern value. Nothing in this Order shall constitute a finding or admission that any Secured Party is entitled to post-petition interest under 11 U.S.C. § 506(b).

5.      Consigned Firearms and Proceeds. In the ordinary course of its business, the Debtor holds certain firearms on consignment for third-party owners, and that title to such consigned firearms remains with the respective consignors. Amounts received by the Debtor from the sale of consigned firearms that are attributable to the consignors' ownership interests, exclusive of the Debtor's commission, do not constitute property of the estate and do not constitute Cash Collateral. The Debtor is authorized, but not directed, to remit such consignor proceeds in the ordinary course of business, notwithstanding any cash collateral restrictions, and to continue accounting for and segregating such amounts in accordance with its existing business practices.

6.      No Payment of Prepetition Debt. The Debtor is prohibited from using Cash Collateral to pay any prepetition principal or prepetition interest on any prepetition indebtedness, except as may be expressly authorized by a further order of this Court or by written agreement of the applicable Secured Party approved by the Court.

7.      Insurance and Taxes. The Debtor shall maintain insurance on its assets in the ordinary course of business and shall timely file all required post-petition tax returns and make post-petition tax payments as they become due in the ordinary course and in accordance with the Budget.

8.      Reporting. The Debtor shall comply with all applicable operating reporting requirements of the United States Trustee and shall make such additional budget-to-actual information available to Secured Parties as may be required by this Court or agreed upon by the parties.

9.      _Duration of Interim Relief._ This Order shall remain in effect on an interim basis until the earlier of the entry of a final cash collateral order or further order of this Court.

**IT IS SO ORDERED.**

###

RESPECTFULLY SUBMITTED AND APPROVED BY:

WM Law

s/_____
Ryan M. Graham, KS #79061
15095 W. 116th St.
Olathe, KS 66062
Phone (913) 422-0909 / Fax (913) 428-8549
graham@wagonergroup.com
_ATTORNEYS FOR DEBTOR_


ILENE J. LASHINSKY
UNITED STATES TRUSTEE


s/_____
Richard A. Kear, KS #20724
301 North Main Street, Suite 1150
Wichita, KS 67202
(202) 573-6945
Richard.kear@usdoj.gov

Label Matrix for local noticing
1083-2
Case 26-20160
District of Kansas
Kansas City
Fri Feb  6 16:13:11 CST 2026

Custombilt Firearms Manufacturing LLC
6201 Robinson Street
Overland Park, KS 66202-3056

6201 Robinson Street, LLC
6201 Robinson Street
Overland Park KS 66202-3056

Bernie Juarez
Wells Fargo Corporate
4101 Wiseman Blvd, BLDG 108
San Antonio TX 78251-4200

FedEx Freight
Dept CH
PO Box 10306
Palatine IL 60055-0306

Internal Revenue Service
PO Box 7346
Philadelphia PA 19101-7346

Kansas Department of Revenue
PO Box 12005
Topeka KS 66612-2005

(p)KANSAS GAS SERVICE
PO BOX 3535
TOPEKA KS 66601-3535

Missouri Department of Revenue
PO Box 475
Jefferson City MO 65105-0475

U.S. Trustee
Office of the United States Trustee
301 North Main Suite 1150
Wichita, KS 67202-4811

Wells Fargo Bank N.A.
PO Box 94435
Albuquerque NM 87199-4435

Ryan Michael Graham
Wm Law
15095 West 116th Street
Olathe, KS 66062-1098

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Kansas Gas Service
PO Box 219046
Kansas City MO 64121

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Customer Deposits
N/A

(u)Various gift card holders

End of Label Matrix
Mailable recipients    11
Bypassed recipients     2
Total                  13